IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

INSPIRED BY DESIGN, LLC,

                    Plaintiff,

v.

SAMMY'S SEW SHOP, LLC, et al.,                    Case No. 16-CV-2290-DDC-KGG

                    Defendants.

MEMORANDUM AND ORDER

Plaintiff Inspired by Design, LLC brought this lawsuit against Sammy's Sew Shop, LLC and Samantha Pantaleo, asserting trade dress infringement, unfair competition, and copyright infringement claims.  This action comes before the court on defendants' Motion to Dismiss or, Alternatively, to Transfer Venue (Doc. 6).  Plaintiffs have filed a response opposing the motion (Doc. 9), and defendants have submitted a reply (Doc. 10).  After considering the evidence and arguments presented in the parties' briefs, the court denies defendants' motion.

I.    Factual Background

Plaintiff's Complaint (Doc. 1) and an affidavit submitted with plaintiff's opposition brief (Doc. 9-2) allege the following facts, which the court accepts as true for the purpose of this motion.  *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (explaining that on motion to dismiss for lack of personal jurisdiction, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." (quotation omitted)); *see also OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (explaining that plaintiff may satisfy her prima facie burden of demonstrating jurisdiction

by submitting an "affidavit or other written materials [containing] facts that if true would support jurisdiction over the defendant").

Plaintiff is a Kansas limited liability company that makes customized pet beds and pet-related products. Alisa Self formed the company on April 30, 2015. Before then, Ms. Self sold pet beds and pet-related products as a sole proprietor. On June 23, 2012, Ms. Self had started using the website, https://adorepetbeds.com, for advertising and selling her products. Then, on July 31, 2012, Ms. Self began selling her products on an Etsy webpage,[1] under the name "AdoreCustomPetBeds."[2] After Ms. Self formed the plaintiff company, plaintiff continued selling custom pet beds through the https://adorepetbeds.com website and the Etsy webpage. On April 28, 2016, plaintiff acquired a copyright covering photographs, 2-D artwork, technical drawings, and text content published on https://adorepetbeds.com on August 12, 2014.

Defendant Sammy's Sew Shop, LLC also sells custom pet beds. Its primary place of business is in California. It began operating an Etsy webpage around December 19, 2014.[3] It also has a Facebook webpage.[4] Defendant Samantha Pantaleo is the owner of Sammy's Sew Shop. Ms. Pantaleo is a California resident.

Plaintiff alleges that defendants began selling replicas of plaintiff's pet beds around June 12, 2015. On July 16, 2015, an Etsy user named Tyler Gage ordered and paid for a pet bed from

---

[1]     Etsy is an online marketplace where users buy and sell unique goods such as handmade products, vintage items, and craft supplies. *See* https://www.etsy.com/about. Ms. Self describes Etsy as "a peer-to-peer e-commerce website which allows users to create their own online virtual stores called 'Etsy Shops' to sell their products." Doc. 9-2 at ¶ 7. Ms. Self asserts that "Etsy Shop owners have control over the content displayed and the product listings on their Etsy Shop webpages, including pricing." *Id.* at ¶ 8. She also states that Etsy Shop owners keep the profits from sales on their webpages less a $0.20 listing fee and a 3.5% commission for each transaction, which Etsy retains. *Id.*

[2]     *See* https://www.etsy.com/shop/AdoreCustomPetBeds.

[3]     *See* https://www.etsy.com/shop/SammysSewShop.

[4]     *See* https://www.facebook.com/SammysSewShop.

plaintiff's Etsy webpage.  On August 6, 2015, Ms. Self shipped the pet bed from Shawnee, Kansas, to Tyler Gage, 6108 Hilltree Ave., Citrus Heights, California 95621.  UPS delivered the package containing the pet bed to that address on August 11, 2015.  Tyler Gage has a "close personal relationship" with Ms. Pantaleo and, according to plaintiff, Ms. Pantaleo "is associated" with the address 6108 Hilltree Ave., Citrus Heights, California 95621.  Also according to plaintiff, Mr. Gage "is associated" with the address, 8236 Crestshire Cir., Orangevale, California 95662, the same address where plaintiff served Ms. Pantaleo with the summons issued as part of service of process for this lawsuit.

Plaintiff contends that defendants modified their Etsy webpage and pet beds after Tyler Gage ordered and received plaintiff's custom pet bed, making defendants' pet beds even closer replicas of plaintiff's pet beds.  Specifically, plaintiff contends that the modification included advertising bed inserts with zippers to adjust firmness, advertising a fabric and embroidery proofing process, and altering the dip on the front of the pet beds to match the dip on plaintiff's pet beds.

On September 25, 2015, plaintiff's counsel sent a letter to defendants demanding that they cease and desist from violating plaintiff's intellectual property rights.  On October 14, 2015, defendants' counsel responded to plaintiff's letter, denying any violation of plaintiff's intellectual property rights.  On November 18, 2015, plaintiff learned of actual customer confusion between plaintiff and defendants' products.

On May 5, 2016, plaintiff filed its Complaint against defendants in this action.  It asserts trade dress infringement and unfair competition claims under the Lanham Act, 15 U.S.C. § 1125, and a copyright infringement claim under the federal Copyright Act, 17 U.S.C. § 501.  Doc. 1.  Plaintiff seeks an injunction prohibiting defendants from misusing plaintiff's trade dress,

engaging in unfair competition, and infringing on plaintiff's copyright content.  Plaintiff also seeks its lost profits and damages sufficient to compensate it for defendants' unjust enrichment after allegedly violating plaintiff's intellectual property rights.

## II.    Motion to Dismiss for Lack of Personal Jurisdiction

Defendants seek dismissal of plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(2), asserting that our court lacks personal jurisdiction over them.  The court addresses defendants' motion under the governing legal standard set forth below.

### A.  Legal Standard

A plaintiff bears the burden to establish personal jurisdiction over each defendant named in the action.  *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179–80 (10th Cir. 2014) (citation omitted).  But in the preliminary stages of litigation, a plaintiff's burden to prove personal jurisdiction is light.  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008) (citation omitted).

Where, as here, the court is asked to decide a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, plaintiff must make no more than a prima facie showing of jurisdiction to defeat the motion.  *Id.* at 1056–57 (citing *OMI Holdings, Inc.*, 149 F.3d at 1091).  "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant."  *OMI Holdings, Inc.*, 149 F.3d at 1091.

To defeat a plaintiff's prima facie showing of personal jurisdiction, defendants "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'"  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).  Where defendants fail to controvert a plaintiff's allegations with affidavits or other

4

evidence, the court must accept the well-pleaded allegations in the complaint as true, and resolve

any factual disputes in the plaintiff's favor.  *Wenz*, 55 F.3d at 1505.

### B.  Analysis

Plaintiff asserts subject matter jurisdiction under 28 U.S.C. § 1331, which confers

original jurisdiction on federal district courts over "all civil actions arising under the

Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331; *see also* Doc. 9 at ¶ 4.  In

a federal question case, like this one, a court can assert personal jurisdiction over a defendant if:

(1) the applicable statute potentially confers jurisdiction by authorizing service of process on the

defendant; and (2) the exercise of jurisdiction comports with due process.  *Klein v. Cornelius*,

786 F.3d 1310, 1317 (10th Cir. 2015) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d

1206, 1209 (10th Cir. 2000) (further citations omitted)).

Neither the federal Copyright Act, 17 U.S.C. § 101 *et seq.*, nor the Lanham Act, 15

U.S.C. § 1051 *et seq.*, provide for nationwide service of process.  *See be2 LLC v. Ivanov*, 642

F.3d 555, 558 (7th Cir. 2011) (stating the Lanham Act does not provide for nationwide service of

process); *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008)

(noting the same about the federal Copyright Act).  Fed. R. Civ. P. 4(k)(1)(A) thus governs

service.  *See Dudnikov*, 514 F.3d at 1070 (citing Fed. R. Civ. P. 4(k)(1)(A)).  This Rule requires

the court to apply the law of the forum state where the district court is situated.  Fed. R. Civ. P.

4(k)(1)(A).

Kansas' long-arm statute is construed liberally to permit exercise of jurisdiction in every

situation that is consistent with the United States Constitution.  *Federated Rural Elec. Ins. Corp.

v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir. 1994) (citation omitted); *see also* Kan.

Stat. Ann. § 60-308(b)(1)(L) & (b)(2).  Thus, the court need not conduct a separate personal

jurisdiction analysis under Kansas law, because the "first, statutory, inquiry effectively collapses into the second, constitutional, analysis." *Dudnikov*, 514 F.3d at 1070.

The constitutional analysis requires a court to determine whether "exercise[ing] jurisdiction [is] in harmony with due process." *Dudnikov*, 514 F.3d at 1070.  This analysis involves a two-step inquiry:  (1) a defendant "must have 'minimum contacts' with the forum state, such that having to defend a lawsuit" in the forum, (2) "would not 'offend traditional notions of fair play and substantial justice.'"  *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The "minimum contacts" standard is satisfied in one of two ways—either by establishing general jurisdiction or specific jurisdiction based on a defendant's contacts with the forum state.  *Rockwood Select Asset Fund*, 750 F.3d at 1179.  The Tenth Circuit has described how general jurisdiction and specific jurisdiction differ, as follows:

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, and does not require that the claim [at issue] be related to those contacts.  Specific jurisdiction, on the other hand, is premised on something of a *quid pro quo*:  in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.

*Dudnikov*, 514 F.3d at 1078 (citations omitted).

Here, plaintiff argues that the court may exercise both general and specific jurisdiction over defendants based on their contacts with Kansas.  The court thus analyzes both types of personal jurisdiction, below.

### 1.  Minimum Contacts

#### a.  General Jurisdiction

A court may exercise general jurisdiction if the defendant's contacts with the forum are "'so "continuous and systematic" as to render [it] essentially at home in the forum State.'"

*Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can., Ltd.*, 703 F.3d 488, 493 (10th Cir. 2012) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). With general jurisdiction, the court's jurisdiction does not arise directly from a defendant's forum-related activities; instead, the court may maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state.  *OMI Holdings, Inc.*, 149 F.3d at 1091 (citing *Helicopteros*, 466 U.S. at 415).  But, because general jurisdiction is not related to the events giving rise to the suit, courts must impose "a more stringent minimum contacts test" before asserting general jurisdiction, one that "requir[es] the plaintiff to demonstrate the defendant's continuous and systematic general business contacts."  *Id.* (citations and internal quotation marks omitted).

When considering a defendant's business contacts with a forum for purposes of determining whether general jurisdiction exists, "courts have considered such factors as:  (1) whether the [defendant] solicits business in the state through a local office or agents; (2) whether the [defendant] sends agents into the state on a regular basis to solicit business; (3) the extent to which the [defendant] holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the [defendant]."  *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996).

Defendants argue that none of these factors favor exercising general jurisdiction.  In support of their motion to dismiss, defendants have submitted an affidavit signed by Ms. Pantaleo.  In it, Ms. Pantaleo asserts that defendants are not domiciled in Kansas, have not consented to jurisdiction in Kansas, and lack sufficient contacts with Kansas to subject them to personal jurisdiction in this forum.  Defendants contend that they do not solicit business in

Kansas, do not send agents to Kansas to solicit business, do not hold themselves out as doing business in Kansas, do not advertise in Kansas, do not maintain any bank accounts in Kansas, and possess no property, employees, or licenses to do business in Kansas.  Ms. Pantaleo also asserts that defendants have received and processed about 350 orders for custom pet beds and accessories.  Defendants shipped two of those orders (or less than 1% of the total orders) to Kansas.

Plaintiff responds that defendants have held themselves out as doing business in Kansas through the internet—specifically, through the Facebook and Etsy webpages that advertise and market defendants' custom pet beds.  Plaintiff urges the court to exercise jurisdiction using the sliding-scale approach.  This test is one that some courts have endorsed for determining whether a defendant's internet activities support the exercise of personal jurisdiction.  *See Rainy Day Books, Inc. v. Rainy Day Books & Café, LLC*, 186 F. Supp. 2d 1158, 1163 (D. Kan. 2002) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1123–24 (W.D. Pa. 1997)).  But the Tenth Circuit has not adopted this approach.  To the contrary, in the most recent case addressing personal jurisdiction in the internet context, the Tenth Circuit specifically declined to take "a definitive position on the *Zippo* sliding-scale test" even though the Circuit had mentioned it in another case.  *See Shrader v. Biddinger*, 633 F.3d 1235, 1242 n.5 (10th Cir. 2011) (citing *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1296–97 (10th Cir. 1999)).

The Tenth Circuit explained in *Shrader* that the more appropriate analysis of personal jurisdiction in the internet context examines whether "the internet user or site *intentionally direct[ed]* activity or operation at the forum state rather than just having the activity or operation accessible there."  *Id.* at 1240.  Under this approach, "[t]he maintenance of a web site does not in and of itself subject the owner or operator to personal jurisdiction, even for actions relating to the

site, simply because it can be accessed by residents of the forum state." *Id.* at 1241. Instead, the operation of a commercial website subjects a defendant to general personal jurisdiction "'only when the defendant has actually and deliberately used its website to conduct commercial transactions *on a sustained basis with a substantial number of residents* of the forum.'" *Id.* at 1243 (quoting *Smith v. Basin Park Hotel, Inc.*, 178 F.Supp.2d 1225, 1235 (N.D. Okla. 2001)).

Here, plaintiff has not carried its burden of establishing general personal jurisdiction under this standard. Defendants operate websites that market, advertise, and sell their products, which are accessible all over the world, including in Kansas. But plaintiff has not shown that defendants "intentionally directed" website activity at Kansas to subject them to general jurisdiction under the standard announced in *Shrader*. Instead, the record demonstrates that the websites merely are accessible by residents in the forum. These facts are insufficient to establish general jurisdiction. *See Advisors Excel, LLC v. Senior Advisory Group, LLC*, No. 11-4015-JAR, 2011 WL 3489884, at *4 (D. Kan. Aug. 10, 2011) (holding that plaintiff failed to make prima facie showing that defendant's operation of website approximated physical presence in the state sufficient to subject defendant to general jurisdiction).

Plaintiff also has not shown that defendants used the websites "to conduct commercial transactions on a sustained basis with a substantial number of residents." *Shrader*, 633 F.3d at 1243 (emphasis omitted). To the contrary, the record shows that defendants have shipped just two orders to Kansas, or less than 1% of their total sales.[5] This sales volume is insufficient to warrant the exercise of general jurisdiction. *See e.g.*, *id.* (noting that the "case law sets the bar quite high . . . denying general jurisdiction absent substantial sales" (citing *Campbell Pet Co. v. Miale*, 542 F.3d 879, 884 (Fed. Cir. 2008) (holding twelve internet sales for $14,000 over eight

---

[5] Defendants contend that plaintiff placed these orders in an attempt to manufacture jurisdiction. The court need not consider this assertion, even if it is true. Defendants' sales to Kansas, whether or not manufactured by plaintiff, are insufficient to establish sufficient contacts with the forum state.

years insufficient for general jurisdiction); *Revell v. Lidov*, 317 F.3d 467, 471–76 (5th Cir. 2002)

(holding sales of 35 subscriptions in two years insufficient for general jurisdiction) (further

citations omitted)).  Also, defendants posted a picture of one of two sales on the Facebook

webpage, noting that the order was sent to Circleville, Kansas.  But the court cannot find that this

single reference to one Kansas sale on the website demonstrates intentional directing activity at

the forum state sufficient to subject defendants to general jurisdiction.

After considering the four *Trierweiler* factors in the context of defendants' internet

activity (which is the only continuous and systemic activity that plaintiff alleges), the court

concludes plaintiff has not met its burden of establishing "continuous and systematic" contacts

with Kansas sufficient for the court to exercise general personal jurisdiction over defendants.

The court thus lacks general personal jurisdiction in this case.

### b.  Specific Jurisdiction

The court next considers whether defendants' contacts with Kansas are sufficient to

establish specific jurisdiction in the forum.  A court may exercise specific jurisdiction if:  (1) the

out-of-state defendant "purposefully directed" his activities at residents of the forum state and

(2) the plaintiff's injuries arose from those purposefully directed activities.  *Newsome v.

Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013) (citation omitted).  The Tenth Circuit analyzes

the "purposefully directed" requirement differently depending on the cause of action alleged.

*See Dudnikov*, 514 F.3d at 1071.  "In the tort context, we often ask whether the nonresident

defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile,

we sometimes ask whether the defendant 'purposefully availed' itself of the privilege of

conducting activities or consummating a transaction in the forum state."  *Id.* (citations omitted).

"In all events, the shared aim of [the] 'purposeful direction' doctrine has been said by the

Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 475).

Recently, the Supreme Court addressed the kind of "minimum contacts" necessary to support specific jurisdiction. *Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115, 1121 (2014). In a unanimous opinion, the Court explained, "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* The Court emphasized two related aspects of the defendant's relationship with the forum state that must exist for a court to exercise jurisdiction on this basis over a nonresident defendant. *See id.* at 1121–22.

First, the relationship between the defendant and the forum state must arise out of contacts that the "defendant *himself* creates" with the forum state. *Id.* at 1122 (citing *Burger King*, 471 U.S. at 475). "Due process limits on a State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* (citation omitted). The Supreme Court "consistently [has] rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff . . . and the forum State." *Id.* (citation omitted). "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated." *Id.* (citation and internal quotation marks omitted).

Second, the "minimum contacts" analysis must focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (citations omitted). Thus, the Supreme Court has found personal jurisdiction exists "over defendants who

have purposefully 'reach[ed] out beyond' their State and into another [state] by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." *Id.* (quoting *Burger King*, 471 U.S. at 479–480).  In addition, while "physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Id.* (citations omitted).  But a plaintiff "cannot be the only link between the defendant and the forum." *Id.*  "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* (citations omitted).  To put it another way, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123 (citation omitted). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (quoting *Burger King*, 471 U.S. at 475).

### i.    Purposeful direction

The Tenth Circuit applies an "effects test" to determine whether a defendant has "purposefully directed" her activities at the forum state so as to subject the defendant to specific personal jurisdiction. *Dudnikov*, 514 F.3d at 1072 (citing *Calder v. Jones*, 465 U.S. 783, 789–90 (1984)).  This test requires a showing that defendant committed (1) an intentional action that was (2) expressly aimed at the forum state with (3) knowledge that the brunt of the injury would be felt in the forum state. *Id.* (citing *Calder v. Jones*, 465 U.S. at 789–90).

Plaintiff alleges that defendants have "purposefully directed" their activities at residents of the forum state by operating their websites that market, advertise, and sell custom pet beds.

Plaintiff again relies on the sliding scale analysis to support specific jurisdiction based on defendants' internet activity.  But, as explained above, that is not the appropriate test to apply here.  The Tenth Circuit has explained, in the internet context, that neither the "maintenance" of a website nor "posting allegedly defamatory comments or information on an internet site" subjects a defendant to personal jurisdiction simply because residents of the forum state can access the website or read any allegedly defamatory comments posted there.  *Shrader*, 633 F.3d at 1241.  Instead, consistent with the "effects test" analysis under *Calder*, our Circuit has directed courts to examine—for purposes of specific personal jurisdiction—whether "a defendant deliberately directed its message at an audience in the forum state and intended to harm the plaintiff occurring primarily or particularly in the forum state."  *Id.*

Defendants assert that their internet activity fails to establish that they "expressly aimed" their conduct at Kansas.  The court agrees.  Defendants merely maintain a website that is accessible anywhere in the world, including Kansas.  And, through the internet, they have made nominal sales to Kansas.  While plaintiff contends that defendants have advertised and sold infringing custom pet beds on these websites, merely posting the allegedly infringing material, without more, will not suffice to subject a defendant to specific personal jurisdiction wherever an internet user may access the information.  *See Shrader*, 633 F.3d at 1244 (holding that plaintiff had not established specific personal jurisdiction over a defendant who posted an allegedly defamatory email on the internet); *see also Advisors Excel, LLC*, 2011 WL 3489884, at *7 (concluding that "[m]erely posting [an] allegedly infringing trademark on defendant's website does not, alone, subject defendant to personal jurisdiction wherever the information may be accessed").  In sum, defendants' internet contacts are insufficient to establish specific personal jurisdiction under *Shrader*.

Plaintiff also asserts that defendants engaged in purposeful activity by ordering one of plaintiff's custom pet beds from Kansas and by modifying defendants' products to resemble more closely plaintiff's products after receiving the order.  Plaintiff alleges that, on July 16, 2015, an Etsy user named Tyler Gage ordered and paid for a pet bed from plaintiff's Etsy webpage.  Ms. Self shipped the pet bed from Kansas to Mr. Gage at an address in California. Plaintiff contends that Mr. Gage and Ms. Pantaleo have a "close personal relationship," demonstrated by postings on Mr. Gage's Facebook profile page that reference a "Samantha Pantaleo" and include pictures that purportedly show Mr. Gage together with Ms. Pantaleo.  Doc. 9-1 at 32.  Plaintiff also contends that Ms. Pantaleo "is associated" with the California address where plaintiff shipped the pet bed to Mr. Gage and that Mr. Gage "is associated" with a separate California address where plaintiff served Ms. Pantaleo in this lawsuit.

Defendants do not respond to plaintiff's allegations about Mr. Gage's purchase of one of plaintiff's custom pet beds, his connection to Ms. Pantaleo, or the changes made to defendants' Etsy website and pet beds after Mr. Gage received his order from plaintiff.  Viewing as true plaintiff's allegations about Mr. Gage's purchase and his connection to defendants, the court concludes that plaintiff has made a prima facie showing of purposeful direction sufficient to establish specific jurisdiction.  Plaintiff alleges that defendants:  (1) committed intentional action by purchasing, through Mr. Gage, one of plaintiff's pet beds and, afterwards, modifying their Etsy webpage and pet beds to look like even closer replicas of plaintiff's products; (2) expressly aimed their conduct at the forum state by purchasing one of plaintiff's custom pet beds from Kansas; and (3) had knowledge that the brunt of the injury (*i.e.*, copying plaintiff's custom bed beds) would be felt in the forum state where plaintiff operates its business.

With these allegations, plaintiff has established that defendants "purposefully directed" activities in Kansas that caused injury to a Kansas resident, thereby subjecting them to specific personal jurisdiction in this forum. *See, e.g.*, *Dudnikov*, 514 F.3d at 1076–77 (holding that defendants were subject to personal jurisdiction in Colorado where plaintiff alleged that they "expressly aimed" conduct at Colorado); *Kindig It Design, Inc. v. Creative Controls, Inc.*, __ F. Supp. 3d __, 2016 WL 247574, at *9 (D. Utah Jan. 20, 2016) (concluding that, by allegedly copying photographs from a Utah company's website and using the copied materials to create derivative works, defendant's actions made it "both foreseeable and reasonable that [defendant] would be haled into a Utah court"); *Advisors Excel, LLC*, 2011 WL 3489884, at *8 (holding that defendants' alleged use of an infringing trademark, after it received plaintiffs' demand letter and affirmatively stated that it would no longer infringe on plaintiff's trademark, established a prima facie case that defendant intentionally acted in a manner expressly aimed at Kansas); *Pro Fit Mgmt., Inc. v. Lady of Am. Franchise Corp.*, No. 08-2662-JAR-DJW, 2010 WL 4810227, at *5 (D. Kan. Nov. 19, 2010) (concluding that a defendant "should have reasonably foreseen that conduct infringing plaintiff's copyright would cause harm to plaintiff in Kansas, and would require her to defend herself in a Kansas forum" and thus established "the prima facie showing necessary of 'purposeful direction'" for the court to exercise specific personal jurisdiction).

### ii.    Nexus requirement

The court next considers whether plaintiff has alleged sufficiently that its injuries arose from defendants' purposefully directed activities to Kansas. Many courts have interpreted the "arising out of" language "to require some sort of causal connection between a defendant's contacts and the suit at issue." *Dudnikov*, 514 F.3d at 1078. The Tenth Circuit has applied two tests when determining whether a plaintiff has sufficiently alleged a nexus between the contacts

and the injuries alleged:  (1) "but-for" causation; or (2) proximate cause.  *Id.* at 1078–79.  Under the "but-for" causation test, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction."  *Id.* at 1078.  The "proximate cause" test "is considerably more restrictive and calls for courts to examine whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim."  *Id.* (citation, internal quotation marks, and internal alterations omitted).

Plaintiff has alleged sufficient facts to satisfy both of these tests.  Plaintiff asserts that it has invested time, money, and effort towards building its business, establishing its reputation, and fostering goodwill.  Plaintiff contends that defendants purposefully have directed their actions toward plaintiff by selling replicas of plaintiff's custom pet beds in violation of plaintiff's intellectual property rights.  Plaintiff also alleges that defendants' purposefully directed actions have injured plaintiff through customer confusion and lost profits.  These allegations sufficiently allege that plaintiff's claims arise out of defendants' conduct directed at a Kansas resident.  *See Dudnikov*, 514 F.3d at 1079 (finding specific jurisdiction where plaintiffs based their claims on defendants' threats to and interference with plaintiffs' business in Colorado); *Advisors Excel, LLC*, 2011 WL 3489884, at *8 (concluding that plaintiff established a sufficient nexus between defendant's conduct—use of plaintiff's trademark which was purposefully directed at plaintiff— and plaintiff's claims for injuries caused by customer confusion and damage to plaintiff's reputation).  The court thus concludes that plaintiff has met its burden to establish that defendants have sufficient minimum contacts with the forum state to subject themselves to specific personal jurisdiction in this court.

### 2.  Fair Play and Substantial Justice

Even when a defendant's actions create sufficient minimum contacts, the court still must decide whether the exercise of personal jurisdiction "would offend traditional notions of fair play and substantial justice." *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013) (citation and internal quotation marks omitted).  "'Such cases are rare.'" *Id.* (quoting *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009)).  "The defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477).

To determine whether the exercise of jurisdiction is unreasonable, courts consider the following five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings, Inc.*, 149 F.3d at 1095 (citing *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)).

Considering the first factor, the burden on defendants here is not a significant one. Defendants provide no reason to conclude that exercising personal jurisdiction over them in Kansas would impose a substantial burden.  While the court recognizes that it may be inconvenient for defendants, as California residents, to defend a case in Kansas, this burden "does not overcome the justification for the exercise of jurisdiction" "[u]nless the inconvenience is so great on defendant to constitute a deprivation of due process . . . ." *Brooke Credit Corp. v. Tex. Am. Ins., Inc.*, No. 06-1367-JTM, 2007 WL 1586082, at *5 (D. Kan. May 31, 2007) (citation omitted).  Our court has concluded that "[i]t is not constitutionally unreasonable to

exercise jurisdiction on [an out-of-state] defendant when Internet communications, faxes, telecommunications, and relatively inexpensive travel are available." *Id.* (citation omitted); *see also Toytrackerz LLC v. Koehler*, No. 08-2297-GLR, 2009 WL 1505705, at *18 (D. Kan. May 28, 2009) (explaining that "[m]odern transportation and communication, and in particular the implementation of electronic case filing, noticing, and teleconferences, have to some extent lessened the burden to out-of-state defendants").

The second factor also supports a finding that the exercise of personal jurisdiction over defendants is reasonable. Under the second factor, the forum state—Kansas—has an interest in resolving the dispute and providing a forum for plaintiff (a Kansas limited liability company) to seek redress. *Vestring v. Halla*, 920 F. Supp. 2d 1189, 1196 (D. Kan. 2013) ("States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." (citing *Burger King*, 471 U.S. at 483)).

The court concludes that the third, fourth, and fifth factors are neutral ones. Under the third factor, plaintiff makes no argument that it is unable to seek effective relief in a jurisdiction other than Kansas. Under the fourth factor, the parties present conflicting information whether litigating the case in this forum produces the most efficient resolution of the controversy. Plaintiff asserts that most of the witnesses are located in Kansas while defendants contend that witnesses and evidence are located outside in the forum, mostly in California. On this record, the court concludes that witnesses and evidence are located both inside and outside the forum, and thus the fourth factor is a neutral one. And, under the fifth factor, the court knows of no facts to establish that the shared interest of the several states in furthering fundamental substantive social policies favors one forum over another.

After considering the five factors used to determine reasonableness, the court concludes that exercising personal jurisdiction over defendants will not offend traditional notions of fair play and substantial justice.  As noted at the outset, plaintiff's burden of establishing personal jurisdiction over defendants in the preliminary stages of litigation is a light one.  *AST Sports Sci., Inc.*, 514 F.3d at 1056 (citation omitted).  Plaintiff has carried this burden.  The court thus denies defendants' motion to dismiss for lack of personal jurisdiction.

## III.   Motion to Dismiss for Improper Venue

Defendants next argue that the court should dismiss plaintiff's claims against them under Fed. R. Civ. P. 12(b)(3) because venue is not proper in this district.  Federal statute makes venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).  Plaintiff asserts that venue is proper in Kansas under § 1391(b)(2) because a "substantial part of the events or omissions giving rise to the claim occurred" in Kansas.  Doc. 1 at ¶ 6.  Defendants disagree.  They claim that a substantial part of the events occurred in California, and, thus, venue is proper in the Eastern District of California, not Kansas.

But venue under § 1391(b) "is not limited to the district with the *most* substantial events or omissions."  *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010) (citations omitted).  Section 1391(b)(2) "instead 'contemplates that venue can be

appropriate in more than one district . . . [and] permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts.'" *Id.* at 1166 (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)).

The Tenth Circuit has promulgated a two-part test for reviewing challenges to venue under section 1391(b)(2). *Id.* First, the court "examine[s] the nature of the plaintiff's claims and the acts or omissions underlying those claims." *Id.* (citations omitted). Second, the court determines "whether substantial 'events material to those claims occurred' in the forum district." *Id.* (quoting *Gulf Ins.*, 417 F.3d at 357 (further citations omitted)). To satisfy the substantiality requirement, a plaintiff must make a showing of "acts and omissions that have a close nexus to the alleged claims." *Id.* (citing 17 James Wm. Moore et al., *Moore's Federal Practice* § 110.04[1] (3d ed. 2010) (stating that, when engaging in the substantiality analysis, courts "ought not focus solely on the matters that gave rise to the filing of the action, but rather should look at the entire progression of the underlying claim" (further citations and internal quotation marks omitted))).

Applying the Tenth Circuit's two-part test for determining substantiality, the court first considers the nature of plaintiff's claims and the acts or omissions underlying those claims. Here, plaintiff alleges trade dress infringement, unfair competition, and copyright infringement claims. Plaintiff bases its claims on defendants' alleged advertisement and sale of replicas of plaintiff's custom pet beds in violation of plaintiff's intellectual property rights.

Next, the court examines whether substantial events material to plaintiff's claims occurred in this district. As discussed in the section above, plaintiff alleges several events that occurred in Kansas, many of which are material to plaintiff's claims. Most significantly, plaintiff alleges that defendants, acting through Tyler Gage, ordered one of plaintiff's custom pet

beds from Kansas.  After Mr. Gage received the pet bed from plaintiff, defendants allegedly modified their Etsy page and custom pet beds, making defendants' pet beds even closer replicas of plaintiff's pet beds.  And plaintiff alleges that defendants' actions caused injury to its business in Kansas.

The court recognizes that other events giving rise to the claims in this case occurred outside Kansas, including in California, where defendants reside.  But venue "is not limited to the district with the *most* substantial events or omissions" and "'can be appropriate in more than one district . . . .'"  *Bartile Roofs, Inc.*, 618 F.3d at 1165 (quoting *Gulf Ins.*, 417 F.3d at 356); *see also Multi–Media Int'l, LLC v. Promag Retail Servs.*, 343 F. Supp. 2d 1024, 1033–1034 (D. Kan. 2004) (finding venue proper in Kansas when "[t]he contacts in this case consist entirely of oral, written, and electronic communications between both parties.  Even if it is true that a substantial part of the events giving rise to Plaintiff's claim occurred in California, it is equally true that a substantial part of the events surrounding Plaintiff's claim occurred in Kansas." (citation omitted)).

Because a substantial part of the events giving rise to plaintiff's claims occurred in Kansas, venue is proper here.  Consequently, the court denies defendants' motion to dismiss based on lack of venue.

## IV.    Motion to Transfer

Finally, defendants request the court transfer this case to the United States District Court for the Eastern District of California.  Title 28 U.S.C. § 1404(a) governs transfer of venue.  The statute provides:  "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  28 U.S.C. § 1404(a).

The district court has broad discretion under § 1404(a) to adjudicate motions to transfer based on a case-by-case review of convenience and fairness. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991). "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Id.* at 1515 (citations omitted). "'Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue.'" *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)).

The Tenth Circuit has listed the factors that a district court should consider in deciding whether to transfer an action under 28 U.S.C. § 1404(a):

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp.*, 928 F.2d at 1516 (quoting *Tex. Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967)); *see also Bartile Roofs, Inc.*, 618 F.3d at 1167 (citations omitted).

Defendants argue that the court should transfer the case because the witnesses and "[a]ll evidence and sources of proof" are located in California. Doc. 7 at 7. Defendants contend that it is inconvenient and expensive to make defendants and other witnesses travel to Kansas for this lawsuit, and thus transfer is appropriate. The court disagrees with defendants' characterization of the location of witnesses and source of proof. While some of the witnesses and evidence are located in California, other witnesses and evidence exist in Kansas. This factor thus is a neutral one.

Defendants also assert that no advantage exists here of having a local court determine local law because plaintiff asserts claims under federal trademark and copyright law, not Kansas law.  This factor also is a neutral one and does not favor transfer.  Either the federal court in Kansas or California could decide the federal claims asserted here.

After examining the other factors identified by the Tenth Circuit in *Chrysler Credit Corp.*, the Court finds that the balance of equities disfavors the transfer request.  In particular, plaintiff's choice of forum disfavors transfer.  Plaintiff chose this forum, and the court finds no "strong" reason to disturb this choice.  *See Scheidt*, 956 F.2d at 965 ("[U]nless the balance is strong in favor of the movant the plaintiff's choice of forum should rarely be disturbed." (citation and internal quotation marks omitted)).

Considering all these factors, the court concludes that defendants have failed to carry their burden to warrant transferring venue under 28 U.S.C. § 1404(a).  A transfer here would merely shift the burden on the parties from one side to another, and this "obviously is not a permissible justification for a change of venue."  *Scheidt*, 956 F.2d at 965.  Thus, the court denies defendants' motion to transfer.

## V.    Conclusion

For the reasons explained, the court denies defendants' motion to dismiss based on personal jurisdiction and improper venue.  The court also denies defendants' request, in the alternative, to transfer this case to the Eastern District of California.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' Motion to Dismiss or, Alternatively, to Transfer Venue (Doc. 6) is denied.

**IT IS SO ORDERED.**

Dated this 3rd day of August, 2016, at Topeka, Kansas.

s/ Daniel D. Crabtree_____
Daniel D. Crabtree
United States District Judge